Bissell, J.,
delivered the opinion of the court.
The county court of Arapahoe county made an order amending the judgment entry in the case of Schmidt v. Dreyer, and Wolaver, the sheriff, and the present proceeding is an attempt to review that action and restrain the court from further proceeding in the premises.
The original judgment was rendered some five or six years before the attempted amendment, and the time for an appeal or a writ of error liad long gone by. The parties sought to obtain a review of the action of the county court by prosecuting-error from the order made after the judgment had been amended. This was adjudged irregular by the supreme court, who held that these matters could only be reviewed on an appeal or writ of error from the final judgment. Since this was impossible, the parties would be remediless unless they were permitted to enforce the present remedy. Its regularity and sufficiency is not questioned, and it is likewise apparently sustained by the authorities. Schmidt v. Dreyer, 21 Colo. 100; Schwarz v. The County Court of Garfield County, 14 Colo. 44; The People ex rel. Dougan et al. v. The District Court of Lake County, 6 Colo. 534; Jeffries v. Harrington, 11 Colo. 191; Duggen v. McGruder, 12 Am. Dec. 527.
This preliminary matter being disposed of, we are brought to the consideration of the main question, which respects the power of the court to correct its record after the term at which the judgment was entered. There are some minor questions suggested as. collateral to the main proposition, but practically growing out of it. These will be disposed of in their natural order.
We must first state the facts which make up the- history of the case. For these we depend on the proof offered in support of the motion. The appellant, Mrs. Schmidt, did not controvert the showing. The facts were conceded, and we are only to ascertain whether the judgment can be sustained.
In 1891 Mrs. Schmidt brought suit in replevin against *43 Dreyer, and Wolaver, the sheriff of Weld county, to recover certain personal property which the sheriff had taken under an execution issued against Mrs. Schmidt’s husband on a judgment which had theretofore been entered against him. Mrs. Schmidt’s contention was that she had a lien on the property, and was entitled to its possession because of the terms of a chattel mortgage which had been given to her to secure a Iona fide indebtedness. ' This suit was tried in the county court and a judgment rendered for the defendants. In this statement we do not intend to be understood as saying that this was the actual judgment rendered, but simply that it went in favor of the defendants. The case was tried without a jury, and the court took it under advisement and subsequently rendered judgment. What was done at this.time is the subject-matter of the present inquiry. The particular importance of this action springs from the objection which the parties make to the consideration of the testimony by which it is supported. After the judgment was pronounced, the plaintiff Mrs. Schmidt prayed an appeal to the district court, and asked the court to fix the bond which should be given to perfect the appeal. The court fixed the bond at $1,400. The importance of this fact is apparent when we state the conceded value of the property involved in the replevin action was $700. The plaintiff Mrs. Schmidt so stated it, and the defendants admitted it. The appeal was perfected and a bond in this sum executed. After the cause reached the district court it was tried to a jury, who disagreed, or the judgment was set aside in some way, and it stood for a new trial on the issues. Thereafter Mrs. Schmidt dismissed this pending appeal and went into the county court and paid the judgment as it then stood. This is somewhat significant, because as the judgment was in the county court it was simply for the defendants and for their costs. When suit was brought on the replevin bond which Mrs. Schmidt had given in her suit against Dreyer and the sheriff, the parties were met with the defense that the judgment had been satisfied and paid, and that there was never any judgment *44 rendered for the sum of $700. As we imagine, the parties in some way discovered the mistake made by the clerk in the entry of the judgment, and in order to escape their proper responsibility in the replevin action dismissed the appeal and paid the judgment as it had been entered. Whatever the motive or whatever the purpose, the fact remains that the parties attempted to get rid of this judgment and thereby escape any liability to respond for the value of the property which had been taken in the replevin action. We come now to the history of the case as it is disclosed by the showing made on the application to the county court to amend its judgment. The motion was based on the records in the suit of Schmidt v. Dreyer, and likewise on the affidavits of one of the attorneys, the stenographer, and the county judge who-tried the case. The affidavits fairly and fully show that when the judge delivered his opinion, it was stated by one of the counsel that the judgment would be assumed to be for the value of the property or its return, to which the court replied, “ that is the judgment.” When the judge was requested to fix the bond, he fixed it in evident and actual accord with his statement “ that is the judgment.” This is manifest, because the bond was fixed in the sum of $1,400, which was just twice the amount of the admitted value of the property. There would have been no authority on the part of the court to fix the bond in any such sum, unless he had rendered a judgment in favor of the defendants for $700, or the return of the property; otherwise the bond would simply have been sufficient in amount to cover the costs of the proceedings below and on appeal. The stenographer who took the minutes made a notation that the judgment was for the defendants. This was evidently given to the actual clerk of the court, who thereupon entered a judgment in favor of the defendants and for their costs.
On these facts and on proof of this description the present county court, presided over by a different judge, made an order amending the judgment entry so that thereby the judgment was in favor of the defendants in the sum of $700, or *45 for the return of the property taken on the replevin suit which the plaintiff had sued out. Mrs. Schmidt now attempts to restrain the county court from further proceeding in the matter and enforcing the judgment as amended.
One of her principal contentions is based on the character of the evidence which was offered and on which the county court based its action. The appellant cites quite a number of cases wherein the question of what proof can be relied on to justify a court in amending its record by a mine pro tune order, and thereupon asks us to hold the affidavits offered inadmissible, and to restrain the county court from proceeding because there is no absolute written evidence, like a judge’s minutes or other record proof, on which to proceed. While we recognize the preeariousness of the tenure by which successful parties to judgments would hold title if it be conceded their rights may be varied, altered, or affected by parol proof as to what was done at the time of the original entry, we are also impressed with the necessity for permitting the introduction of this kind of proof in order to do substantial justice between parties whose rights are affected by an inaccurate entry. Had the rule been otherwise declared, it might have been supported by the irrefragable argument that the parties were bound by the judgment as it stood, because both they and their attorneys were charged with notice of its terms and responsible for any of its inaccuracies or errors which could at all times have been easily corrected at and during the term in which the judgment was rendered. Negligence in this respect we concede ought perhaps in equity to bar them. The writer is firmly of the opinion this would be an equitable rule. Parties and attorne3rs have no business to lie by and rely on the acts of the clerk and his accuracy in. the entry of judgments, and when he fails, call on the court }rears afterwards to correct the mistake. It is the dutjr of attorneys to examine the judgment entries and see that they are correct, and when errors have’crept in, move promptly for their correction. Whatever ma)r be our opinion respecting it, the law-is otherwise written. It is clearly settled the *46 trial court may proceed on evidence satisfactory to itself, whether oral or documentary, whether of record or otherwise, to correct the entry and make it speak the judgment which the court in fact rendered. This matter has been set at rest by the supreme court of the state, which is in line with the authorities of many other states on the same question. Doane et al. v. Glenn et al., 1 Colo. 454; Freeman on Judgments, sec. 63; Clark v. Lamb, 8 Pick. 414; Frink v. Frink, 43 N. H. 508; Weed v. Weed, 25 Conn. 336; Rugg v. Parker, 7 Gray, 172; In re Wight, Petitioner, 134 U. S. 136.
These authorities broadly support the power of the court •to amend its record and rest its action on proof which shall -be sufficient in its judgment to demonstrate the error inherent in the record. Tested by these rules, the county court was wholly justified in declaring the entry an erroneous one. The recollection of the court, the recollection of counsel, and the recollection of the stenographer all unite on the one proposition that the judgment which the court in fact declared was for the defendants and for the return of the property or its value, which was fixed at $700. A judgment which failed to express this result did not accord with the request of counsel, or the announcement of the judge who tried the case. It may, however, be well insisted there is record evidence to support the motion. The right of appeal was conditioned on the giving of a bond in the sum of $1,400. This is exactly double the amount of what the judgment would have been and actually was if these affidavits are true. The court would not otherwise have so conditioned the right ■of appeal. Nor is it conceivable that Mrs. Schmidt would have idly consented to the restriction of her right by the requirement of a bond of this description unless the judgment had been as the parties now contend. Neither parties nor' counsel consent to the giving of extraordinary bonds unwarranted by the statutes. The difficulty which comes to most litigants in furnishing this class of securities always results in a contest over the amount specified if the court at all transcends his power or his duty in such matters. We *47 therefore conclude that hy the failure to file counter proofs or affidavits it is practically admitted that the judge did find for the defendants and did order a judgment entered for the return of the property or the payment of its valúe, to wit, $700. On the proof, the present court could not have done otherwise than conclude the entry was erroneous, and that the error came through the mistake of the clerk who was charged with the duty of its entry.
This proposition being conceded, we are brought to the main question of the power of the court to amend its records after the term. Of this there is no doubt. The courts everywhere concede authority to make their records conform to the facts. The only possible limitation on the power of the courts in this direction is found in the general expression that after the term they are limited to the correction of those errors which may be regarded as of a clerical character, and which, when corrected, will make the records conform to the facts. The order may only interpolate and make part of the record what was in fact done. The rule has been declared by both the appellate courts of this state in harmony with these general authorities. Kindel v. The Lithographing Co., 19 Colo. 310; Breene v. Booth, 3 Colo. App. 470; Breene v. Booth, 6 Colo. App. 140; Freeman on Judgments, secs. 68 and 70; Gray v. Brignardellow, 1 Wall. 627; Inhabitants of Limerick, 18 Me. 183; Ross v. Ross, 83 Mo. 100; Cleveland Leader P. Co. v. Green, 40 N. E. Rep. 201; Phillips et al. v. Negley, 117 U. S. 665; McClannahan v. Smith, 76 Mo. 428; Wooldridge v. Quinn, 70 Mo. 370; De Castro v. Richardson et al., 25 Cal. 49; Compton v. Cline, 5 Grat. 137.
It must therefore be conceded the county court had full authority to correct this entry so that it should speak the actual judgment pronounced by the court in Schmidt v. Dreyer. We do not understand there is any disagreement between this and the supreme court with reference to this general doctrine, though counsel seek to build up an imaginary difference between them. It is quite true the court in the Kindel Case speaks of judicial errors as being the subject- *48 matter of correction without stating the limitations which are often declared essential to the statement of this doctrine. We do not therefrom conclude the supreme courtintended to lay down the general doctrine that judicial errors are always the subject-matter of correction after the term, and we are led to this conclusion because, as appears from the opinion in the Kindel Case, the matter involved in that decision was a clerical error, which majr always be corrected, and for the further reason the authorities cited in the paragraph do not support the general proposition, except as it may be limited in accordance with the expression of the general line of authorities on this question. We are not called upon, however, to discuss this question at all, or attempt to reconcile the apparent rather than real differences between the cases, because, in the present matter, no such question is presented, and there is no attempt to correct anything other than a clerical error which has crept into the record and made the judgment something other than that which the court pronounced. The only reason we refer to this matter at all is because of the arguments of counsel on the question. The only difference between the case of Breene v. Booth, and Kindel v. The Lithographing Co., is found in the intimations of the supreme court that the rule which we announced governing appeals did not accord with their judgment. In the Breene v. Booth Case an individual judgment was entered against Breene, and from it he prosecuted an appeal. Thereafter, by a nunc pro tunc order, the judgment entry was corrected, and the judgment thereupon became a judgment against Breene and Booth as a copartnership. On the filing of an amended transcript showing this fact, there was an attempt to prosecute the original appeal on the basis of the amended judgment. This court held it could not be done. When the case came up afterwards on appeal (6th Colo. App. 140), and the judgment was affirmed, there was no departure from this general announcement. The supreme court would seem to think otherwise, and to hold that for the protection of the rights of the parties to the suit, if the judgment should *49 be afterwards corrected, it might be incorporated into the record of the appeal, according to the rule announced in the 3 Bing. 346, and the appeal be heard on the amended record. We have found no case of this description which is based on facts at all similar to those presented in the Breene v. Booth Case. Whether, under facts like those, the supreme court would adhere to the doctrine which was intimated in the Kindel Case we do not inquire. Equitable considerations might possibly support that rule, though a strong argument would be found against it based on the negligence of the parties and the attorneys to supervise and attend to the entry of the proper judgment at the time when the clerk made the entry. The inconvenience and apparent injustice to the parties is the result of their own folly and their own negligence, and unless the journal entries are matters of which the parties and the attorneys have no supervision, as is the case .in the English courts, it might be argued a different rule should prevail. We are not called upon, however, to discuss or dispose of this matter, nor to determine what rule, if any, has been announced by the supreme court. In a case requiring it, we should undoubtedly be called on to ascertain what that court had done, and be bound to follow the law as it might have been declared.
The action of the district court in the present proceedings, which adjudged the correction made by the county judge entirely regular and proper, is in harmony with the law as we have herein stated it, and, its judgment being entirely correct, it will be affirmed.

Affirmed.